UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

ANDREW BELL and DEAD ZEBRA, INC,

    *Plaintiffs*,

-against-

THE HERSHEY CO.; HERSHEY CHOCOLATE AND CONFECTIONARY LLC.

    *Defendants*.

**COMPLAINT**

Plaintiffs Andrew Bell ("Bell") and Dead Zebra, Inc. ("Dead Zebra") (together "Plaintiffs"), by their attorneys, Rottenberg Lipman Rich P.C., as and for their Complaint against Defendants The Hershey Co. and Hershey Chocolate and Confectionary LLC (collectively, "Defendants" or "Hershey"), allege as follows:

## SUMMARY OF THE ACTION

1. This lawsuit for declaratory judgment concerns the overreach by corporate giant Hershey in threatening to shut down the creation and distribution of Bell's artwork in the form of his vinyl designer toys and related items.

2. Bell is an artist and graphic designer. For the last twenty years, Bell, through his one-man company Dead Zebra, has become one of the better-known creators of designer toys. Designer toys (or "art toys" as they are also known) are "a kind of collectible art object in toy form," created in small numbers and marketed to adults.[1] Usually made from rotocast vinyl or resin, the work of the best designers is eagerly collected, largely through word of mouth, the creators' websites, fantasy conferences such as Comicon, and a small number of specialty stores.

---

[1] Marc Steinberg, A Vinyl Platform for Dissent: Designer Toys and Character Merchandising, *The Journal of Visual Culture*, Volume: 9 issue: 2, page(s): 209-228 (2010).

3. Designer toys are frequently subversive, appealing to their counterculture audience, and they often critique and satirize social norms. For example, through his Dyzplastic and O-No Food Company brands, Bell creates limited-edition, monster-themed vinyl products taking a critical but wry look at the hazards of overwork, environmental degradation, and public taste in food consumption.

4. Two of Bell's designer toys are Kill Kat and Kisses of Death. Kill Kat, is a parody of Hershey's Kit Kat and the company's role in the dominance of sugar-based snacks. The six-inch vinyl character resembles two conjoined wafers of a Kit Kat bar but with legs, feet and goofy monster faces with eyes, and with sharp teeth and dripping blood or drool. The character comes in packaging that invokes that of a Kit Kat bar in coloration and overall design impact, but with multiple indications that this is a satirical product unaffiliated with Hershey, ranging from the prominent central text: "Kill Kat/Evil Wafers/in Demonic Possession" to addition text such as "Now 10% More Evil," and the indication that it is a product of "O-No Food Company." Exhibit A attached herewith. Other versions of Kill Kat in lurid colors and matching packaging become even more bizarre: Poison Pumpkin Spice, Purple Drank, Strawberry Ectoplasm, Matcha Snake Venom, and Ground Bones and Blood.

5. Kisses of Death are vinyl monsters that resemble Hershey's Kisses but again prominently feature sharp teeth and drips of blood or drool. They come packaged in silver foil and a tag with the words "Kisses of Death" in a bag marked with text such as "O-No Food Co," "Mostly Evil," and "78% Evil." Another edition features a windowed box revealing a larger version of the figure featuring a skull face, referred to by Bell as the "skull version." Exhibit B attached herewith.

6. Bell makes it abundantly clear, not just in the packaging but also in the accompanying marketing, that these are part fun spoof and part social comment. Thus, Kill Kats is introduced with the warning "Are sugary treats trying to kill us? Kill Kat is certainly trying! These evil wafers are determined to cause some damage." Similarly, the Kisses of Death are described: "This sweet and sentient set of deadly droplets (non-edible, almost entirely evil) would like nothing more than to kill you slightly quicker than their purely sugar-based counterparts."

7. Kill Kats and Kisses of Death are part of a sustained campaign by Bell to comment in his art on such themes, including the processed food industry's impact on health. As such they are entitled to First Amendment protection as expressive works, as parodies and social commentary.

8. Hershey claims that Kill Kat and Kisses of Death, and their related products, infringe its trademarks and trade dress, constitute trademark dilution, and are a danger to public safety. Exhibit C. It has repeatedly demanded that Bell cease all creation and distribution of the allegedly infringing material (and pay Hershey for the privilege) or it will enforce its rights, seeking an injunction, damages, seizure of allegedly infringing product, and its attorneys' fees.

9. Bell and Dead Zebra therefore bring this suit for declaratory judgment that Kill Kat and Kisses of Death do not infringe any of Hershey's trademarks or trade dress under Federal or State law, do not constitute false endorsement, and do not constitute Federal or State dilution of Hershey's marks.

**PARTIES, JURISDICTION AND VENUE**

10. Plaintiff Andrew Bell is an individual residing at 122 West Street, Brooklyn, New York, 11222.

3

11. Plaintiff Dead Zebra, Inc. is a New York corporation with its place of business at 122 West Street, Brooklyn, New York, 11222. Andrew Bell is the sole officer and shareholder of Dead Zebra, Inc.

12. The Hershey Company is a Delaware corporation, with its principal place of business at 19 East Chocolate Avenue, Hershey, Pennsylvania. The Hershey Company is the manufacturer and distributor of Kit Kat bars and Kisses chocolates in the United States.

13. Hershey Chocolate and Confectionary LLC is a Delaware limited liability company with a business address at 8001 Arista Place, Suite 430, Broomfield, Colorado. Hershey Chocolate & Confectionary LLC is a division of The Hershey Company and manages its intellectual property, including the Kit Kat and Kisses trademarks. See Exhibit C.

14. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1338. The claims alleged in this Complaint arise under the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, the Lanham Act, 15 U.S.C. § 1052 *et seq*. and §1125, *et seq*.

15. This Court has personal jurisdiction over the Defendants because Defendants have sent cease and desist letters and attempted to enforce their rights against a resident of the forum and this litigation arises from such enforcement. Further, Defendants have done, and continue to do, extensive business in this forum.

16. Venue is proper in this District under 28 U.S.C. § 1391(b) and (c) because a substantial part of the events giving rise to Plaintiffs' claims occurred in this District and because the Defendants are subject to personal jurisdiction in this District.

17. An actual case or controversy exists between the parties. Defendants have repeatedly threatened to take legal action against Plaintiffs, have asserted that Plaintiffs are engaging in acts of trademark and trade dress infringement and dilution, and have demanded that

Plaintiffs immediately cease and desist from creating and selling the allegedly infringing products.

## ANDREW BELL AND DEAD ZEBRA'S ARTISTIC ACTIVITIES.

18. Bell is an artist who works in a variety of media including painting, drawing, prints, sculpture, mixed media, and designer toys. Many of his creations are featured on his websites https://www.deadzebra.com and https://www.creaturesinmyhead.com/.

19. Bell has a BFA from the School of Visual Arts in New York. He did freelance graphic work for Marvel Comics for several years and was a senior designer at Nickelodeon from 2000 to 2005.

20. Bell taught dimensional art, materials and methods at the Parsons School of Design in New York, for three years from 2016 to 2018, and he has been a guest lecturer, including at conferences and conventions, at the Fashion Institute of Technology and at the Pratt Institute.

21. Bell's work has been exhibited in many galleries in the United States and abroad, in group shows and solo shows. Bell's work has also been shown at the Pasadena Museum of California Art, Pasadena, CA; the Warhol Museum, Pittsburgh, PA; and the Kusakabe Folk Museum, Takayama, Japan.

22. Bell has won several prestigious awards for his artwork, including four Designer Toy Awards presented by Clutter Magazine. These include "Toy of the Year" for Kill Kat in 2018 (https://www.designertoyawards.com/winners/2018).

23. His work has been featured in such publications as the *New York Times*, *Newsweek*, *Wired*, and *Fast Company*.

24. His creations have appeared on popular television shows such as *The Big Bang Theory* and *Girls*.

25. Bell has also collaborated with companies for graphic design and designer toys, including a long-running collaboration with Google LLC to create original sculptures and designer toys based on Google's Android character.

26. Bell's work across all media shares certain characteristics – a ghoulish fascination with monsters, social commentary involving a subversive attitude to societal norms, and a rich sense of humor.

27. Although Bell works in all media, he has focused on the creation of designer toys.

### DESIGNER TOYS AS AN ARTFORM

28. Designer toys are an art form (hence their alternative name "art toys") and they differ from conventional toys in several respects.

29. Designer toys are typically created by an individual artist or through an artist collective, representing a personal sensibility, rather than the product of an anonymous committee in a corporate entity.

30. Designer toys are aimed at an adult market and not at children.

31. As adult toys, designer toys frequently combine originality with an intellectual meaning or subtext, commenting on or subverting the qualities of real-world objects or ideas.

32. Designer toys are not intended to be played with, in the traditional sense, but are collectible art objects.

33. As collectibles, designer toys are typically made in limited numbers ranging from unique sculptures to at most a thousand or so and are relatively expensive.

34. As collectibles, designer toys are not mass-distributed through traditional child-oriented toy outlets, but are sold through word of mouth, at conferences and conventions, specialized online and bricks and mortar collectibles stores, via art galleries or museum shops, and through the artist's own website.

35. Designer toys draw inspiration from, and share common traits with, other media and more traditional art forms, for example, Japanese manga or the work of art world megastars such as Jeff Koons, Takashi Murakami and KAWS.

36. Bell is considered one of the foremost creators of designer toys in the United States.

**KILL KAT AND KISSES OF DEATH**

37. Among the designer toys created by Bell are Kill Kat and Kisses of Death. Kill Kat is an imaginary creature that resembles generally two conjoined Kit Kat wafers, but with significant differences: (i) the vinyl is stamped with the Kill Kat name; (ii) the toy is designed to stand on end: it has two legs, webbed feet, and two different faces with sharp teeth and googly eyes; (iii) in the standard version it stands 6 inches tall, whereas a standard Kit Kat is 3.5 inches from end to end; and (iv) the body of the creature is significantly chunkier than a standard Kit Kat bar. Exhibit A; Exhibit C.

38. The packaging for the standard Kill Kat sculpture similarly invokes the general design of the packaging of a Kit Kat bar, but again with many differences. The face of the packet prominently shows at center the **Kill Kat** name with the associated text, "**Evil Wafers in Demonic Possession**" and "**may contain Andrew Bell**"; at upper left "**Now 10% More Evil!**"; at upper right "**1 in 10 Harbor a Dark Secret!**" The packet sides each have the text: "**Kill Kat Evil Wafers under Demonic Possession**." The back panel states twice that the product is

7

distributed by "**O-No Food Company**"; the Nutritional Facts panel states "**Serving Size 1 vinyl figure . . . Calories 666**" and the ingredients include "**vinyl, paint, pure evil, blood, Andrew Bell, Suffering and Hate**." Next to the scan code are the prominent words: "**!This is a collectible art sculpture, not a toy or a food product. Intended for adult collectors, not suitable for children under the age of 14. DO NOT EAT. Seriously.**"

39. Consistent with being a collectible, Kill Kat is also available in very limited numbers in other iterations: Dark Lord of Licorice; Poison Pumpkin Spice, Purple Drank, Bad Banana Blight; Strawberry Ectoplasm, Matcha Snake Venom, Ground Bones and Blood; Too Much Sake; and Cappuccino Caffeine Overdose. Each vinyl character is manufactured in brightly colored vinyl and comes in similarly colored packaging with its own comic and grotesque texts. Each one is clearly marked as a vinyl collectible toy produced by O-No Foods.

40. All standard size Kill Kat editions retail for $40-$50.

41. Kill Kat is also available in a "King Size." The vinyl figure stands a full 14 ½ inches tall and retails for $100-$130. Exhibit D.

42. Kisses of Death are vinyl monsters that superficially resemble Hershey's Kisses but also feature prominent white teeth dripping blood or drool. Each measures approximately 2 inches tall and comes in packaging indicating that they are "**Vinyl Art Sculptures**" from "**O-No Food C**o" and "**may contain Andrew Bell**," along with many of the same or similar comic asides to those on the Kill Kat sculptures and packaging. The pack of three retails for $30-$40. Exhibit B.

43. Also available is a larger version of Kisses of Death, 4 inches tall and partially visible through a window in its 5 inch square box. This "skull version" of Kisses of Death features large eye sockets and a gaping mouth. The box is plastered on every surface with the

same indications of source and contents, and such fantasy ingredients as 89g of "**Unnecessary Sugar**," 33% "**Little Death, The Big Sleep, and Dirt Naps**", and warns that "**Your daily values may be higher or lower depending on how many skulls you typically consume daily**." It retails for $30-$40.

44. Bell also offers a small number of items featuring his Kill Kat and Kisses of Death artwork, namely an enamel pin ($10), a hand cut baffler art puzzle ($100), and stickers. See [www.shop.deadzebra.com](www.shop.deadzebra.com).

45. Bell offers Kill Kat and Kisses of Death along with his other creations through his websites deadzebra.com and shop.deadzebra.com. The pages featuring the products include the following conspicuous statement and disclaimer: "**Product is an adult collectible and not intended for children under the age of 15! This is a parodic work of art, not a food product. This work is not sponsored, endorsed, authorized by, or in any way affiliated with The Hershey Company or any of its subsidiaries or its affiliates**."

46. Bell also offers Kill Kat and Kisses of Death along with his other creations when making personal appearances at conferences and conventions, and in certain specialized online and bricks and mortar collectibles stores with names like 3DRobot, Kidrobot, Nerdy Collectibles, and Stranger Factory. A partial list of those stores (which do not all offer all of his work at all times) is available on his website. On information and belief, only one of these sources has also sold Hershey's Kit Kat, Kisses, or any other Hershey product. Neither Bell nor Dead Zebra use paid advertising to offer the products for sale.

47. Kill Kat and Kisses of Death are not only designer toy collectibles, they are vehicles for Bell to express in his art his macabre commentary on society, especially society's problematic relationship with food consumption. Thus, Bell introduces Kill Kat on his website:

9

"Are sugary treats killing us? Kill Kat is certainly trying! These evil wafers are determined to cause some damage. Andrew Bell's original sculpture is back in vinyl figure form! This sweet and psycho conjoined candy stands 6" tall and comes in a candy wrapper style package."

48. Similarly, Kisses of Death is introduced with the text: "O-No Co presents Kisses.. of Death! This sweet and sentient set of deadly droplets (non-edible, almost entirely evil) would like nothing more than to kill you slightly quicker than their purely sugar-based counterparts. Three different 2" vinyl sculpts are wrapped in foil and sealed in a custom bag, and a separate 4″ skull edition partially foil wrapped revealing a portion of the figure in a windowed box."

49. Hershey is the perfect vehicle for Bell's parodic and satirical interests. Hershey is the archetypal American candy manufacturer, familiar to all through its famous brands, resort, and family theme park. When Hershey advertises its attractions in Hershey, Pennsylvania, with the trademarked line "Hershey The Sweetest Place on Earth," it is celebrating both the sugary sweetness of its candy and the small-town wholesomeness of its image.

50. Bell's other food-themed projects include: (i) Intolerant Lactose and Rat Holes cereal boxes; (ii) a series of vinyl sushi sculptures that play with the idea of raw fish as food (also available in a number of prints under the collective title *Never Look Back*); (iii) O-No Single Serving key chains with vinyl creatures such as Torn Terry the truncated tuna, Peeled Peter the partial potato, Putrid Patty pet food; a Do Not Eat! Book containing 204 pages of Bell's eating themed graphics; a series of resin dog food sculptures described as "Available moist and meaty or vaguely brown and mostly unidentifiable . . just like real pet food! Each one is just a little bit different, all are just a little bit gross."

51. Bell has taken part in a number of art shows and events that specifically highlight his commentary on the themes of food and consumption, often through the idea of monsters. For

example, in 2013 Bell had a solo exhibition of his work at a gallery called AdHocSpace, in Vienna, Austria, that focused on the effects of genetic engineering on the world's fruit supply. In 2013, Bell exhibited in a group show Monsters and Misfits III at the Kusakabe Folk Museum, Takayama, Japan, a number of sculptures that focused on the consumption of food as living commodities embodied in abstracted monsters.

52. In 2009-2010, Bell was the featured artist in a multi-venue exhibition in France called Nouveaux Monstres which featured a full wall mural of his King of Corn character, a critique of the overwhelming presence of corn-based products and sweeteners in our daily lives. This was a theme Bell had already explored in a painting of a candy corn gasping in a pool of sugar in his painting *High Fructose*.

53. In 2009, The Andy Warhol Museum in Pittsburgh, Pennsylvania opened The Vader Project, an exhibition of works by one hundred artists based on the iconic Darth Vader helmet from the movie Star Wars. Bell's contribution, entitled *Darthodontics*, with its grotesque and oversized teeth and braces, imagined the effect of years of dental neglect on the character.

**HERSHEY'S DEMANDS**

54. On or about July 8, 2019, counsel for Hershey sent Bell and Dead Zebra a cease and desist letter claiming that Kill Kat and Kisses of Death constitute trademark infringement and would lead consumers to wrongly believe that the products were produced by or under license from Hershey.

55. On August 5, 2019, Bell responded, denying that he was infringing Hershey's marks, but offering as a courtesy to make certain changes to his packaging and add the disclaimer to his website, which he did.

56. A number of letters were exchanged between Bell and his counsel, on the one hand, and Hershey's counsel on the other between July 2019 and late March 2020 in which Bell explained why his products do not infringe Hershey's trademarks or trade dress in light of his First Amendment rights in his expressive works, that they are a protected work of parody and social commentary, and in any event he is not using the titles Kill Kat and Kisses of Death in a trademark sense. Hershey continued to claim trademark infringement and added a claim for trademark dilution on the grounds that Kill Kat and Kisses of Death tarnished Hershey's marks. Hershey further baselessly claimed that Kill Kat and Kisses of Death constitute a public danger on the grounds that a child might eat them.

57. Despite Bell's expressed willingness to compromise further, Hershey insisted that Bell and Dead Zebra cease all sales of Kill Kat or Kisses of Death and related merchandise. On March 26, 2020, while reserving all rights, Hershey sent a proposed settlement agreement which not only barred all distribution, through any means, of the allegedly infringing products, but also demanded that Bell pay Hershey a sum of money and never make reference to them again in any context.

58. On June 26, 2020, counsel for Bell rejected the offer and made a counteroffer. Hershey has not responded within the requested period.

59. Hershey's cease and desist letters, its threats to interfere with Bell's sales outlets and to sue for trademark infringement and dilution have created an actual, substantial and immediate controversy warranting the issuance of declaratory judgments.

## PLAINTIFFS' INVOCATION OF HERSHEY'S TRADEMARKS AND TRADE DRESS DO NOT CONSTITUTE TRADEMARK INFRINGEMENT, FALSE DESIGNATION OF ORIGIN, OR DILUTION UNDER THE LANHAM ACT OR NEW YORK LAW.

60. Bell's invocation of Hershey's Kit Kat and Kisses products in his Kill Kat and Kisses of Death figures do not constitute trademark or trade dress infringement. Both are expressive works of art entitled to First Amendment protection as commentary and parody. The use of the marks and trade dress is directly related to the social commentary and creative content of the works. Nothing in Bell's use of the marks is explicitly misleading or likely to mislead, nor is Bell's use of the marks and trade dress likely to cause confusion or mistake, or deceive or mislead consumers as to the affiliation, connection, or association of Kill Kat and Kisses of Death with Hershey, or as to the origin, sponsorship or approval of Kill Kat and Kisses of Death by Hershey. In fact, it is quite the opposite -- Bell makes it abundantly clear both on his website, in the packaging, and on the designer toy itself, that these are not affiliated in any way with Hershey.

61. While the Hershey marks are strongly associated with candy and wholesomeness, that strength only serves to heighten the obviousness of the parody in Bell's gross and evil monster art toys. Similarly, while Bell deliberately invokes the Hershey marks, he does so not to sell candy but for the non-trademark purpose of creating works of art that comment on the false wholesomeness of the candy product.

62. Bell's works do not in any way compete with Hershey's products, and their markets, price-points, and channels of distribution are entirely different. While Hershey may occasionally sell its chocolate employing a Halloween theme on its packaging, it has not, on information and belief, ever created and marketed designer toys or collectibles specifically for adults, much less in the style of the grotesque creatures of Bell's imagination.

63. On information and belief, Hershey has no or almost no evidence of actual consumer confusion and any such evidence would not rise to the particularly compelling level necessary to outweigh Bell's First Amendment interests.

64. Bell's invocation of the Hershey marks is not made in bad faith when such invocation is in the expressive service of parody or commentary.

65. The quality of Bell's products is high, as evidenced by the fact that Kill Kat won the designer toy of the year award in 2018, and that they retail at a relatively high price.

66. Hershey no doubt considers that its customers are sophisticated consumers of chocolate, even given that Kit Kat and Kisses retail at a low price point and their very wide availability makes impulse buys probable. In contrast, the collectors of designer toys are highly aware of the artists at work in their field, must seek out specialty sources for their purchases, and are deterred from impulse buying by the collectible's relatively high price point.

67. For the same reasons, the strength of the Hershey marks is not diluted by Kill Kat and Kisses of Death. Hershey is a famous candy company and its products are ubiquitous. The contrast between the sweetness and wholesomeness of the Hershey marks and the demonic subversiveness of Bell's artwork negates any likelihood that consumers will associate the two or that Hershey's marks will be blurred or tarnished.

68. Bell's First Amendment rights outweigh any slight chance of dilution of Hershey's marks. Further, the federal anti-dilution provisions of the Lanham Act include an explicit fair use exception for "parodying, criticizing, or commenting upon the famous mark owner or the goods or services of the famous mark owner," of which this is a clear cut example. 15 U.S.C. § 1125(c)(3)(ii).

## CLAIMS FOR RELIEF

### Count I—Declaratory Judgment for Non-Infringement of Hershey's Trademarks and Trade Dress Under the Lanham Act, 15 U.S.C. §§ 1114, 1125.

69. Plaintiffs repeat and reallege the allegations set forth in Paragraphs 1 through 68 of this Complaint as if fully set forth herein.

70. Defendants have alleged that Plaintiffs have infringed Defendants' trademarks and trade dress and Plaintiffs have a reasonable apprehension of a lawsuit.

71. Plaintiffs' actions set forth above do not constitute trademark or trade dress infringement under the Lanham Act.

72. Plaintiffs' use of Hershey's marks is not a trademark use.

73. Kill Kat and Kisses of Death are expressive works that parody Hershey's attempt to present these products as purely wholesome and comment on them as examples of society's infatuation with unhealthy sugary products.

74. Plaintiffs' invocation of Defendants' trademarks and trade dress are directly related to Plaintiffs' expressive works and do not mislead consumers into believing that those expressive works are by Defendants, are endorsed by Defendants, or are affiliated with Defendants.

75. Consumers of Hershey's products are not likely to be confused as to the source, endorsement or affiliation of Kill Kat and Kisses of Death.

76. Plaintiffs are entitled to a declaratory judgment that Kill Kat and Kisses of Death do not infringe Defendants' trademark or trade dress rights under the Lanham Act.

**Count II—Declaratory Judgment for Non-Infringement of Hershey's Trademarks and Trade Dress under New York Common Law.**

77. Plaintiffs repeat and reallege the allegations set forth in Paragraphs 1 through 76 of this Complaint as if fully set forth herein.

78. Defendants have alleged that Plaintiffs have infringed Defendants' trademarks and trade dress and Plaintiffs have a reasonable apprehension of a lawsuit.

79. Plaintiffs' use of Hershey's marks is not a trademark use.

80. Kill Kat and Kisses of Death are expressive works that parody Hershey's attempt to present these products as purely wholesome and comment on them as examples of society's infatuation with unhealthy sugary products.

81. Plaintiffs' invocation of Defendants' trademarks and trade dress are directly related to Plaintiffs' expressive works and do not mislead consumers into believing that those expressive works are by Defendants, are endorsed by Defendants, or are affiliated with Defendants.

82. Consumers of Hershey's products are not likely to be confused as to the source, endorsement of affiliation of Kill Kat and Kisses of Death.

83. Plaintiffs are entitled to a declaratory judgment that Kill Kat and Kisses of Death do not infringe Defendants' trademark or trade dress rights under New York common law.

**Count III—Declaratory Judgment that Kill Kat and Kisses of Death do not Dilute Hershey's Trademarks and Trade Dress under the Lanham Act, 15 U.S.C. § 1125.**

84. Plaintiffs repeat and reallege the allegations set forth in Paragraphs 1 through 83 of this Complaint as if fully set forth herein.

85. Defendants have alleged that Plaintiffs actions dilute Defendants' famous trademarks and Plaintiffs have a reasonable apprehension of a lawsuit.

86. Plaintiffs' use of Hershey's marks is not a trademark use.

87. Kill Kat and Kisses of Death are expressive works that parody Hershey's attempt to present these products as purely wholesome and comment on them as examples of society's infatuation with unhealthy sugary products.

88. Plaintiffs' invocation of Defendants' trademarks and trade dress are directly related to Plaintiffs' expressive works and do not mislead consumers into believing that those expressive works are by the Defendants, are endorsed by Defendants, or are affiliated with the Defendants.

89. Because Kill Kat and Kisses of Death are clearly expressive parody and commentary on Hershey's famous products, any risk of tarnishment or blurring of Defendants' marks is outweighed by Plaintiffs' First Amendment rights and is a fair use under 15 U.S.C. § 1125(c)(3)(ii).

90. Plaintiffs are entitled to a declaratory judgment that Kill Kat and Kisses of Death do not dilute Defendants' trademark or trade dress under the Lanham Act.

**Count IV—Declaratory Judgment that Kill Kat and Kisses of Death do not Dilute Hershey's Trademarks and Trade Dress under N.Y. General Business Law § 360-l.**

91. Plaintiffs repeat and reallege the allegations set forth in Paragraphs 1 through 90 of this Complaint as if fully set forth herein.

92. Defendants have alleged that Plaintiffs actions dilute Defendants' famous trademarks and Plaintiffs have a reasonable apprehension of a lawsuit.

93. Plaintiffs' use of Hershey's marks is not a trademark use.

94. Kill Kat and Kisses of Death are expressive works that parody Hershey's attempt to present these products as purely wholesome and comment on them as examples of society's infatuation with unhealthy sugary products.

95. Plaintiffs' invocation of Defendants' trademarks and trade dress are directly related to Plaintiffs' expressive works and do not mislead consumers into believing that those expressive works are by Defendants, are endorsed by Defendants, or are affiliated with Defendants.

96. Because Kill Kat and Kisses of Death are clearly expressive parody and commentary on Hershey's famous products, any risk of tarnishment or blurring of Defendants' marks is outweighed by Plaintiffs' First Amendment rights.

97. Plaintiffs are entitled to a declaratory judgment that Kill Kat and Kisses of Death do not dilute Defendants' trademark or trade dress under N.Y. General Business Law § 360-l.

**WHEREFORE**, Plaintiffs demand judgment as follows:

A. Declaring, pursuant to 28 U.S.C. §§ 2201 and 2202 that Plaintiffs' Kill Kat and Kisses of Death products do not constitute infringement of Defendants' trademarks or trade dress under the Lanham Act, 15 U.S.C. §§ 1052 and 1125, et seq;

B. Declaring, pursuant to 28 U.S.C. § 2201 and 2202 that Plaintiffs' Kill Kat and Kisses of Death products do not constitute dilution of Defendants' trademarks or trade dress under the Lanham Act, 15 U.S.C. §1125.

C. Declaring that Plaintiffs' Kill Kat and Kisses of Death products do not constitute infringement of Defendants' trademarks or trade dress or dilution of Defendants' trademarks or trade dress pursuant to New York General Business Law §§ 360-l, 360-o, or New York common law;

D. Awarding Plaintiffs their attorneys' fees associated with this action; and

E. Awarding such other and further relief as this Court deems just and proper.

Dated: New York, New York
July 24, 2020

**ROTTENBERG LIPMAN RICH, P.C.**

By: __/s/Christopher Robinson_____
Christopher J. Robinson
Richard E. Rosberger
The Helmsley Building
230 Park Avenue, 18th Floor
New York, New York 10169
(212) 661-3080
*Attorneys for Declaratory Judgment Plaintiffs*